EXHIBIT 1

Case 8:20-cv-00288-JLS-ADS Document 1-1 Filed 02/19/20 Page 2 of 41 Page ID #:11
Electronically Filed by Superior Court of California, County of Orange, 01/16/2020 09:09:00 AM.
30-2020-01123351-CU-WT-CJC - ROA # 7 - DAVID H. YAMASAKI, Clerk of the Court By Isia Vazquez, Deputy Clerk.

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

| | FOR COURT USE ONLY<br>*(SOLO PARA USO DE LA CORTE)* |
|---|---|

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

WELLS FARGO & COMPANY and WELLS FARGO BANK, N.A. a
Delaware Corporation; SHERRI PARKS, an individual, and DOES 1-20

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

ALEXANDER AGUIRRE, an individual

---

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

---

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* | CASE NUMBER:<br>*(Número del Caso):* Judge Gregory H. Lewis<br>30-2020-01123351-CU-WT-CJC |
|---|---|

Superior Court of California County of Orange
700 Civic Center Drive West, Santa Ana, CA 92701

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Brian M. Heit, Esq. 340 South Lemon Avenue, Suite 8933, Walnut, CA, 91789

| DATE: 01/16/2020<br>*(Fecha)* DAVID H. YAMASAKI, Clerk of the Court | Clerk, by<br>*(Secretario)* Isia Vazquez | , Deputy<br>*(Adjunto)* |
|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☒ on behalf of *(specify):* Wells Fargo & Company

   under: ☒ CCP 416.10 (corporation)     ☐ CCP 416.60 (minor)
           ☐ CCP 416.20 (defunct corporation)     ☐ CCP 416.70 (conservatee)
           ☐ CCP 416.40 (association or partnership)     ☐ CCP 416.90 (authorized person)
           ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

[SEAL]

**Page 1 of 1**

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>*www.courtinfo.ca.gov* |
|---|---|---|

Brian M. Heit, Esq. (State Bar No. 302474)
Phillip D. Viramontes II, Esq. (State Bar No. 315274)
**HEIT LAW GROUP, P.C.**
340 South Lemon Avenue, Suite 8933
Walnut, California 91789
Telephone: (310) 744-5227
Email: brian@heitlawgroup.com
*Attorney for Plaintiff, ALEXANDER AGUIRRE*

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF ORANGE

| | |
|---|---|
| ALEXANDER AGUIRRE, an individual,<br><br>    Plaintiffs,<br><br>vs.<br><br>WELLS FARGO & COMPANY and<br>WELLS FARGO BANK, N.A. a<br>Delaware Corporation; SHERRI PARKS,<br>an individual, and DOES 1-20<br><br>    Defendants. | CASE No.  30-2020-01123351-CU-WT-CJC<br>Judge Gregory H. Lewis<br>UNLIMITED JURISDICTION<br>*(Amount demand exceeds $25,000)*<br>**COMPLAINT FOR DAMAGES:**<br>**1. Retaliation**<br>**2. Failure to Prevent Discrimination,<br>Harassment or Retaliation**<br>**3. Sex Discrimination**<br>**4. Negligent Hiring, Training, Supervision and<br>Retention**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff ALEXANDER AGUIRRE, an individual, hereby complain against Defendants WELLS FARGO & COMPANY and WELLS FARGO BANK, N.A. a Delaware Corporation; SHERRI PARKS, an individual, and DOES 1-20, inclusive, for i) Retaliation, ii) Failure to Prevent Discrimination, Harassment or Retaliation, iii) sex discrimination, vi) negligent training, retention, or hiring as follows:

1

**FIRST COMPLAINT FOR DAMAGES**

# I.   PARTIES

1.      Plaintiff ALEXANDER AGUIRRE is an individual, who at all times herein is, and was, a resident of the County of Orange, State of California.

2.      Defendant WELLS FARGO & COMPANY and WELLS FARGO BANK, N.A. is a Delaware Corporation organized under the Laws for the State of Delaware, registered with the California Secretary of State, and located, among other locations, in Orange County California.

3.      Defendant SHERRI PARKS, is an individual, who, based upon information and belief, at all times herein is, and was, a resident of the County of Orange, State of California. Defendant, SHERRI PARKS is an employee of Defendant WELLS FARGO & COMPANY and WELLS FARGO BANK, N.A..

4.      Plaintiff is ignorant of the true names and capacity of defendants sued herein as DOES 1 - 20 inclusive, and therefore sues these defendants by such fictitious names.  Plaintiff will amend this Complaint to allege their true names and capacities when ascertained.  Plaintiff is informed and believes and based thereon alleges that each of the fictitiously named defendants are responsible in some manner for the injuries to the Plaintiff as alleged herein, and that such injuries as herein alleged were proximately caused by such defendants.

5.      Plaintiff is informed and believes and based thereupon alleges that at all relevant times herein mentioned each of the Defendants and Does 1- 20, inclusive, were the agents, servants and/or employees, partner, predecessor-in-interest, successor-in-interest, beneficiary, executor, fictitious business name, trustee, subsidiary, related/affiliated entity, assignee, assignor, legal representative, general administrator, member, co-conspirator, and/or joint-venturer or occupied other relationships with each of the other named Defendants and at all times herein mentioned acted within the course and scope of said agency and/or employment and/or other relationship and each other Defendant has ratified, consented to, had actual and/or constructive knowledge of, was bound by, approved or, and/or failed to prevent the acts of their agents, employees, predecessor-in-interest, successor-in-interest, trustees, trustors, and/or representatives, and that each actively, passively, acquiesced, participated in, allowed, aided and abetted, assisted, acted, or failed to act, with one another in the commission of the wrongdoing alleged in this Complaint.

6.      Whenever in this Complaint an act or omission of a corporation or business entity is alleged,

2

**FIRST COMPLAINT FOR DAMAGES**

1   said allegation shall be deemed to mean and include an allegation that the corporation or business entity
2   acted or omitted to act through its authorized officers, directors, agents, servants, and/or employees, acting
3   within the course and scope of their duties, that the act or omission was authorized by corporate managerial
4   officers or directors, and that the act or omission was ratified by the officers and directors of the corporation.

5

6                              **II.     RESPONDEAT SUPERIOR**

7          7.      Based upon information and belief, ALEXANDER AGUIRRE alleges that with respect to
8   Defendants WELLS FARGO & COMPANY and WELLS FARGO BANK, N.A. a Delaware Corporation;
9   SHERRI PARKS, an individual, and DOES 1-20, that their capacity is, or may be, that of an
10  employer/employee in relation to the corporation or entity Defendant WELLS FARGO & COMPANY
11  AND WELLS FARGO BANK, N.A., for which they acted within their capacity and scope as an employee
12  of that corporation or business entity.

13         8.      As a result of the tortious conduct perpetrated by Defendant(s)' employee, such employee
14  was acting within the scope of her employment duties and his tortious conduct was therefore imputable to
15  the corporation or business entity Defendant under the doctrine of respondeat superior.

16         9.      At the time of the tortious conduct that injured the Plaintiff ALEXANDER AGUIRRE, he
17  was committed by the corporation or business entity Defendant(s)' employee, such employee was acting
18  within the scope of his apparent authority, such that the Plaintiff ALEXANDER AGUIRRE was justified in
19  relying on the appearance of authority respecting the employee's actions. Such tortious conduct was
20  therefore imputable to the corporation or business entity Defendant(s) under the doctrine of respondeat
21  superior.

22         10.     The tortious conduct that was committed by the corporation or business entity Defendant(s)'
23  employee and which injured the Plaintiff ALEXANDER AGUIRRE as described herein, was authorized or
24  approved in advance by the corporation or business entity Defendant(s), and thus, such tortious conduct is
25  imputable to the corporation or business entity Defendant(s) under the doctrine of respondeat superior.

26         11.     The tortious conduct that was committed by the corporation or business entity
27  Defendant(s)'employee and which injured the Plaintiff ALEXANDER AGUIRRE as described herein,
28  subsequently ratified by Defendant(s), and thus, such tortious conduct is imputable to Defendant(s) the

3
                              **FIRST COMPLAINT FOR DAMAGES**

1  corporation or business entity under the doctrine of respondeat superior.

2

3  ### III.   AIDING & ABETTING & CIVIL CONSPIRACY

4      12.    Based upon information and belief, Plaintiff ALEXANDER AGUIRRE thereon allege that

5  Defendants WELLS FARGO & COMPANY and WELLS FARGO BANK, N.A. a Delaware Corporation;

6  SHERRI PARKS, an individual, and DOES 1-20, were aiders/abettors/co-conspirators of each other, who

7  aided and abetted each other in a scheme to deprive the Plaintiff of his rights, title and interests as alleged

8  herein.

9      13.    In committing the wrongful acts alleged herein, Defendants, and each of them, have pursued,

10  or joined in the pursuit of a common course of conduct, and have acted in concert via agreement with, and

11  conspired with, one another in furtherance of the improper acts, plans, schemes, and transactions that are

12  the subject of this Complaint.

13      14.    In addition, each of the Defendants, rendered substantial assistance in the wrongs complained

14  of herein.  In taking such actions to substantially assist the commission of the wrongdoing complained of

15  herein, each Defendant acted with knowledge of the primary wrongdoing, and was aware of his, her or its

16  overall contribution to, and furtherance of the wrongdoing.

17      15.    Consequently, the actions of Defendants WELLS FARGO & COMPANY and WELLS

18  FARGO BANK, N.A. a Delaware Corporation; SHERRI PARKS, an individual, and DOES 1-20, were

19  done not in the best interest of the other.

20      16.    As a result, based upon information and belief, Plaintiff ALEXANDER AGUIRRE thereon

21  alleges that each Defendants WELLS FARGO & COMPANY and WELLS FARGO BANK, N.A. a

22  Delaware Corporation; SHERRI PARKS, an individual, and DOES 1-20, is liable for the events and

23  damages as alleged herein by their knowingly consenting to or approving the unlawful acts.

24      17.    As such, Defendants WELLS FARGO & COMPANY AND WELLS FARGO BANK, N.A.

25  and SHERRI PARKS, and each DOE Defendant, should be held accountable for each other's wrongful

26  misconduct as set forth herein.  An inequitable result will follow if such Defendants are not treated as aiders,

27  abettors and co-conspirators of the facts as alleged herein.

28

4

## IV.   JURISDICTION & VENUE

18.   The Superior Court of the State of California in and for the County of Orange has jurisdiction over this action and venue is proper in this Court as the unlawful conduct was committed within the confines and borders of Orange County, California.

19.   The amount in controversy is more than $25,000.

## V.   GENERAL ALLEGATIONS

20.   Plaintiff ALEXANDER AGUIRRE, (hereinafter referred to as "AGUIRRE" or "Plaintiff/PLAINTIFF") began working for the Defendant WELLS FARGO & COMPANY AND WELLS FARGO BANK, N.A. (hereinafter referred to as "WELLS FARGO"), AGUIRRE started working for WELLS FARGO as a teller on or about November 5, 2015, earning $11.50 an hour.  He was promoted to a Customer Sales and Service in July of 2016 and received a raise to $14.42 an hour.  He was promoted to the position of Personal Banker 1 in November of 2016 and received a raise to $18.51.

21.   Defendant SHERRI PARKS worked for WELLS FARGO as a regional manager during all relevant times and through the present day.

22.   AGUIRRE wanted to advance within the corporate structure at WELLS FARGO, and so expressed interest in both management and licensing to his Regional Manager, SHERRI PARKS, in October 2017.

23.   SHERRI PARKS told AGUIRRE that he must choose between becoming a licensed personal banker and becoming a manager because  enrolling him in the licensing program just to become a manager would waste company money.

24.   SHERRI PARKS did not allow AGUIRRE to enter the aforementioned program because she felt he was not ready for the licensing program, even though he had met the previous criteria for promotion and licensing.

25.   After AGUIRRE completed his licensing in June 2018.  He realized that SHERRI PARKS had enrolled two other female employees in the licensing program  around the time that AGUIRRE had entered the licensing program in March 2018.  One of the women passed her licensing exam, and she was immediately promoted to service manager.  The other employee failed the licensing program twice and

5

was promoted to service manager. These employees were accepted into the program by SHERRI PARKS and were given the freedom to choose between licensed personal banker and service manager, whereas AGUIRRE was treated differently.

26.     AGUIRRE witnessed SHERRI PARKS tell a male personal banker that he had to be in his position for a year before getting promoted, while SHERRI PARKS promoted female employees who had been at their position for less than a year.

27.     Mr. Aguirre later became licensed as a personal banker, and WELLS FARGO gave him a raise of $21.03 an hour. Mr. Aguirre then received his final raise in March of 2019 when his pay was increased to $21.33. His job duties were opening and managing accounts, handling debit deposits, and generally helping customers with their personal banking needs.

28.     On November 15, 2018, a man walked into the WELLS FARGO down the road from the branch at which AGUIRRE worked. This customer tried to take an eighty-thousand-dollar check and deposit it with WELLS FARGO. That branch initially approved the transaction, but later went back and reversed it because it was suspected to be fraudulent. That WELLS FARGO branch did not flag the customer's account, did not enter a "be on the lookout" alert into WELLS FARGO'S system, and did not contact any other WELLS FARGO branch in the area.

29.     On or about November 16, 2018, that same customer walked into the WELLS FARGO branch at which AGUIRRE worked, which was located at 18529 Yorba Linda Boulevard, Yorba Linda, CA 92886. That day, both the Branch Manager, Alexandra Zambri, and the Service Manager, Manpreet Shergill, were both absent from the branch, making AGUIRRE the only WELLS FARGO employee with the clearance to handle the check. After checking the system and seeing no warning messages or recommendations reported for the customer's account or the check he was attempting to deposit, AGUIRRE approved the deposit of the check. WELLS FARGO policy is to make the funds available as a convenience to the customer. Unfortunately, the check that this customer deposited was a fake.

30.     On or about November 17, 2018, the customer went to the WELLS FARGO Yorba Linda branch and requested a cashier's check for eighty-thousand ($80,000). The transaction was approved by the Service Manager, Manpreet Shergill. AGUIRRE did not help the customer that day and was not involved in tendering the cashier's check to the customer.

6

31.     On or about the weekend of November 17, 2018, AGUIRRE called WELLS FARGO's weekend regional service consultant, and tried to get the cashier's check from being cashed, but was informed that the branch could do nothing about the fraud until Monday.  That Monday, AGUIRRE researched the check and saw that it had been deposited at a Chase bank.  AGUIRRE and his Service Manager Manpreet Shergill were able to call Chase and work out a 10-day hold on the account so that WELLS FARGO could retrieve the funds.  After placing this 10 day hold on the account at Chase, AGUIRRE and Manpreet Shergill notified the regional service consultant that the 10-day hold had been placed, and that WELLS FARGO could retrieve the funds within those ten days.   WELLS FARGO did not act in a timely manner and suffered a loss of forty-thousand dollars ($40,000).

32.     After the loss was confirmed by his managers, AGUIRRE'S time at work was consumed with stress and worry regarding his job.  He was worried that, since he was involved in the chain of causation that led to the loss, he would be blamed or that his manager would lose her job. This process of investigation carried on for months.  Finally, in or about March of 2019, AGUIRRE could no longer take the uncertainty and asked his manager, Manpreet Shegrill, to look up the transaction to see who WELLS FARGO blamed for the loss.  The search returned that only AGUIRRE was being blamed for the loss.

33.     Discussion was had by WELLS FARGO management about what the corrective action would be for AGUIRRE and Ms. Shegrill.  SHERRI PARK'S opinion was very persuasive to the end decision, which Alexandra Zambri relayed later to AGUIRRE in a personal conversation.  Ms. Zambri also spoke to AGUIRRE about how she thought it was unfair that the entire blame be put on AGUIRRE and that AGUIRRE would likely be terminated. AGUIRRE was upset at the decision to blame him for the loss entirely.  He felt discriminated against and went to WELLS FARGO human resources to complain.

34.     AGUIRRE contacted human resources in April of 2019 and did not hear back until May, when they told him that he was complaining about discrimination and unfair treatment regarding an event that had yet to take place (i.e. his firing or other adverse employment action).  They informed AGUIRRE that they were closing his HR complaint until the company made a final decision regarding the loss.

35.     AGUIRRE did not hear back from Human Resources or anyone else at WELLS FARGO until June 13, 2019, when he was fired.

36.     AGUIRRE was never interviewed regarding the loss and never got an opportunity to talk

7

**FIRST COMPLAINT FOR DAMAGES**

about the situation before he was fired.

37.     The person that authorized the issuance of the cashier's check, Manpreet Shergill, only received a probation extension.  Manpreet had already been on probation because of an incident in which she had stepped in to help on the teller line on a busy day and had come up short $1,200.

38.     This was AGUIRRE's first incidence of loss exposure and WELLS FARGO fired him half a year later after he had attempted to complain to human resources about discrimination.

## VI.     EXHAUSTION OF ADMINISTRATIVE REMEDIES

39.     AGUIRRE complained to other managers/supervisor and Human Resources of Defendant WELLS FARGO & COMPANY AND WELLS FARGO BANK, N.A. regarding the retaliatory and discriminatory actions taken against him.

40.     WELLS FARGO & COMPANY AND WELLS FARGO BANK, N.A., knew, or should have known, about AGUIRRE's complaints regarding the retaliatory and discriminatory actions taken against him by SHERRI PARKS as a REGIONAL Manager and in her supervisory capacity with WELLS FARGO & COMPANY AND WELLS FARGO BANK, N.A. and AGUIRRE's discussion with Human Resources.

41.     Neither SHERRI PARKS nor WELLS FARGO & COMPANY AND WELLS FARGO BANK, N.A., investigated, provided a satisfactory response to AGUIRRE's complaint, or the adverse employment actions, taken against him.

42.     On, or about, October 24, 2019 Plaintiff ALEXANDER AGUIRRE filed a charge with the State of California, Department of Fair Employment and Housing (hereinafter referred to as "DFEH") and obtained a Right to Sue Letter regarding Claim No. 201910-08126231 for the following:

- **Complainant was discriminated against** because of complainant's race, national origin (includes language restrictions), color, sex/gender, age (40 and over) and as a result of the discrimination was denied hire or promotion, demoted, asked impermissible non-job-related questions, denied a work environment free of discrimination and/or retaliation.
- **Complainant experienced retaliation** because complainant reported or resisted

8

1         any form of discrimination or harassment and as a result was denied hire or

2         promotion, denied or forced transfer, demoted, asked impermissible non-job-related

3         questions, denied a work environment free of discrimination and/or retaliation,

4         failed to give equal considerations in making employment decisions, partial

5         recommendation for subsequent employment in retaliation for filing discrimination

6         or harassment complaints.

7   (Attached hereto as Exhibit A, is a true and correct copy of the October 24, 2019 Right to Sue Letter

8   issued in the Claim No. 201910-08126231 by the State of California, Department of Fair Employment and

9   Housing, and incorporated herein by this reference.)

10        43.      Accordingly, Plaintiff has timely complied with all prerequisites to suit.

11

12                    **VI.    CAUSES OF ACTION**

13                   **FIRST CAUSE OF ACTION**

14                      *Retaliation*

        *(As to Defendants WELLS FARGO & COMPANY AND WELLS FARGO BANK, N.A.,*

15               *SHERRI PARKS and DOES 1 to 20)*

16        44.      Plaintiff ALEXANDER AGUIRRE refers to and incorporates by reference paragraphs 1

17   through 43 above, inclusive, as though set forth in full herein, and alleges this First Cause of Action for

18   Retaliation as against each Defendant WELLS FARGO & COMPANY AND WELLS FARGO BANK,

19   N.A., SHERRI PARKS and DOES 1 to 20, inclusive, and each of them, as follows:

20        45.      AGUIRRE engaged in protected activity, namely to question the decision of his employer

21   with regard to adverse employment actions and complained about discrimination to WELLS FARGO'S

22   human resources department. .

23        46.      Defendants WELLS FARGO & COMPANY AND WELLS FARGO BANK, N.A.,

24   SHERRI PARKS and DOE Defendants 1 to 20 as aiders, abettors and conspirators, inclusive, and each of

25   them, dismissed AGUIRRE'S human resources complaint and fired AGUIRRE, thereby taking an adverse

26   employment action against AGUIRRE.

27        47.      Defendants WELLS FARGO & COMPANY AND WELLS FARGO BANK, N.A.,

28   SHERRI PARKS and DOE Defendants 1 to 20 as aiders, abettors and conspirators, inclusive, and each of

9

1 | them, retaliated against AGUIRRE because of his protected activity, in violation of Government Code §
2 | 12940(h), Title 2 California Administrative Code §§§ 7287.6, 7287.7, and 7287.8, and in violation of the
3 | common law in abrogation of her rights.

4 |      48.     That Defendants' WELLS FARGO & COMPANY AND WELLS FARGO BANK, N.A.,
5 | SHERRI PARKS and DOE Defendants 1 to 20 as aiders, abettors and conspirators, inclusive, and each of
6 | them, decision to take the aforementioned adverse employment action against AGUIRRE was a
7 | substantial factor in causing his harm.

8 |      49.     AGUIRRE received a right-to-sue letter from the DFEH and filed this action in a timely
9 | manner thereafter.  Accordingly, AGUIRRE has timely complied with all prerequisites to suit.

10 |      50.     AGUIRRE was injured and damaged as alleged above as a direct and legal result of the
11 | conduct of Defendants WELLS FARGO & COMPANY AND WELLS FARGO BANK, N.A., SHERRI
12 | PARKS and DOE Defendants 1 to 20 as aiders, abettors and conspirators, inclusive, and each of them.

13 |      51.     As a proximate result of the wrongful actions of Defendants WELLS FARGO &
14 | COMPANY AND WELLS FARGO BANK, N.A., SHERRI PARKS and DOE Defendants 1 to 20 as
15 | aiders, abettors and conspirators, inclusive, and each of them against AGUIRRE, as alleged above,
16 | AGUIRRE has been harmed in that he has suffered the loss of wages, salary, benefits, and additional
17 | amounts of money he would have had, had he not been fired by Defendants WELLS FARGO &
18 | COMPANY AND WELLS FARGO BANK, N.A., SHERRI PARKS and DOE Defendants 1 to 20 as
19 | aiders, abettors and conspirators, inclusive, and each of them.

20 |      52.     As a further proximate result of the wrongful actions of Defendants WELLS FARGO &
21 | COMPANY AND WELLS FARGO BANK, N.A., SHERRI PARKS and DOES 1 to 20 as aiders, abettors
22 | and conspirators, inclusive, and each of them, against Plaintiff as alleged above, Plaintiff has been harmed
23 | in that Plaintiff has suffered an intangible loss of employment-related opportunities and benefits.

24 |      53.     As a further proximate result of the wrongful actions by Defendants WELLS FARGO &
25 | COMPANY AND WELLS FARGO BANK, N.A., SHERRI PARKS and DOE Defendants 1 to 20 as
26 | aiders, abettors and conspirators, inclusive, and each of them against AGUIRRE as alleged above,
27 | AGUIRRE has been harmed in that he has suffered humiliation, mental anguish, emotional and physical
28 | distress, anxiety, and has been injured in the mind and body.

10

**FIRST COMPLAINT FOR DAMAGES**

1    54.    The wrongful conduct of Defendants WELLS FARGO & COMPANY AND WELLS
2   FARGO BANK, N.A., SHERRI PARKS and DOE Defendants 1 to 20 as aiders, abettors and conspirators,
3   inclusive, and each of them, as set forth herein above was perpetrated upon AGUIRRE intentionally,
4   willfully, fraudulently, in conscious disregard of AGUIRRE' rights and safety and with a callous
5   indifference to the injurious consequences which were substantially certain to occur and was shameful,
6   despicable and deplorable.

7                                **SECOND CAUSE OF ACTION**
8                      *Failure to Prevent Discrimination, Harassment or Retaliation*
9        *(As to Defendants WELLS FARGO & COMPANY AND WELLS FARGO BANK, N.A.,*
         *SHERRI PARKS and DOES 1 to 20)*

10   55.    Plaintiff ALEXANDER AGUIRRE refers to and incorporates by reference paragraphs 1
11  through 54 above, inclusive, as though set forth in full herein, and alleges this Second Cause of Action for
12  Failure to Prevent Discrimination, Harassment or Retaliation as against each Defendant WELLS FARGO
13  & COMPANY AND WELLS FARGO BANK, N.A., SHERRI PARKS and DOES 1 to 20 as aiders,
14  abettors and conspirators, inclusive, and each of them, as follows:

15   56.    Plaintiff AGUIRRE was an employee of Defendants WELLS FARGO & COMPANY
16  AND WELLS FARGO BANK, N.A., SHERRI PARKS and DOES 1 to 20 as aiders, abettors and
17  conspirators, inclusive, and each of them.

18   57.    Plaintiff AGUIRRE was subjected to retaliation in the course of his employment when
19  Defendants WELLS FARGO & COMPANY AND WELLS FARGO BANK, N.A., SHERRI PARKS and
20  DOES 1 to 20 as aiders, abettors and conspirators, inclusive, and each of them fired AGUIRRE after he
21  complained of discrimination to human resources.

22   58.    Defendants WELLS FARGO & COMPANY AND WELLS FARGO BANK, N.A.,
23  SHERRI PARKS and DOES 1 to 20 as aiders, abettors and conspirators, inclusive, and each of them, by
24  permitting the retaliation to occur, and by retaliating against AGUIRRE because of his complaint to
25  human resources, failed to take all reasonable steps necessary to prevent retaliation from occurring in
26  violation of California Government Code §§ 12926.1 and 12940(k) and all applicable regulations under
27  the California Code of Regulations.

28   59.    Defendants' WELLS FARGO & COMPANY AND WELLS FARGO BANK, N.A.,

11
                           **FIRST COMPLAINT FOR DAMAGES**

SHERRI PARKS and DOES 1 to 20 as aiders, abettors and conspirators, inclusive, and each of them, failure to take all reasonable steps to prevent retaliation was a substantial factor in causing AGUIRRE'S harm.

60.     AGUIRRE received a right-to-sue letter from the DFEH and filed this action in a timely manner.  Accordingly, AGUIRRE has timely complied with all prerequisites to suit.

61.     AGUIRRE was injured and damaged as alleged above as a direct and legal result of the conduct of Defendants WELLS FARGO & COMPANY AND WELLS FARGO BANK, N.A., SHERRI PARKS and DOES 1 to 20 as aiders, abettors and conspirators, inclusive, and each of them.

62.     As a proximate result of the wrongful actions of Defendants WELLS FARGO & COMPANY AND WELLS FARGO BANK, N.A., SHERRI PARKS and DOES 1 to 20 as aiders, abettors and conspirators, inclusive, and each of them, against Plaintiff, as alleged above, AGUIRRE has been harmed in that he has suffered the loss of wages, salary, benefits, and additional amounts of money Plaintiff would have received if Plaintiff had not been subject to adverse employment actions by Defendants WELLS FARGO & COMPANY AND WELLS FARGO BANK, N.A., SHERRI PARKS and DOES 1 to 20 as aiders, abettors and conspirators, inclusive, and each of them.

63.     As a further proximate result of the wrongful actions of Defendants WELLS FARGO & COMPANY AND WELLS FARGO BANK, N.A., SHERRI PARKS and DOES 1 to 20 as aiders, abettors and conspirators, inclusive, and each of them, against Plaintiff as alleged above, Plaintiff has been harmed in that Plaintiff has suffered an intangible loss of employment-related opportunities.

64.     As a further proximate result of the wrongful actions of Defendants WELLS FARGO & COMPANY AND WELLS FARGO BANK, N.A., SHERRI PARKS and DOES 1 to 20 as aiders, abettors and conspirators, inclusive, and each of them, against Plaintiff as alleged above, AGUIRRE has been harmed in that he has suffered humiliation, mental anguish, emotional and physical distress, anxiety, and has been injured in the mind and body.

65.     The wrongful conduct of Defendants WELLS FARGO & COMPANY AND WELLS FARGO BANK, N.A., SHERRI PARKS and DOES 1 to 20 as aiders, abettors and conspirators, inclusive, and each of them, set forth herein above was perpetrated upon AGUIRRE intentionally, willfully, fraudulently, in conscious disregard of his rights and safety and with a callous indifference to the injurious

12

1  consequences which were substantially certain to occur and was shameful, despicable and deplorable.

### THIRD CAUSE OF ACTION
*Sex Discrimination*
(*As to Defendants WELLS FARGO & COMPANY AND WELLS FARGO BANK, N.A.,
SHERRI PARKS and DOES 1 to 20*)

66.     Plaintiff ALEXANDER AGUIRRE refers to and incorporates by reference paragraphs 1 through 65 above, inclusive, as though set forth in full herein, and alleges this Third Cause of Action for Sex Discrimination as against each Defendant WELLS FARGO & COMPANY AND WELLS FARGO BANK, N.A., SHERRI PARKS and DOES 1 to 20 as aiders, abettors and conspirators, inclusive, and each of them, as follows:

67.     Plaintiff AGUIRRE was an employee of Defendants WELLS FARGO & COMPANY AND WELLS FARGO BANK, N.A., SHERRI PARKS and DOES 1 to 20 as aiders, abettors and conspirators, inclusive.

68.     Defendants WELLS FARGO & COMPANY AND WELLS FARGO BANK, N.A., SHERRI PARKS and DOES 1 to 20 as aiders, abettors and conspirators, inclusive, fired AGUIRRE, thus subjecting AGUIRRE to an adverse employment action.

69.     AGUIRRE'S gender was a substantial motivating reason for Defendants WELLS FARGO & COMPANY AND WELLS FARGO BANK, N.A., SHERRI PARKS and DOES 1 to 20 as aiders, abettors and conspirators, inclusive, decision to discharge AGUIRRE.

70.     Defendants' WELLS FARGO & COMPANY AND WELLS FARGO BANK, N.A., SHERRI PARKS and DOES 1 to 20 as aiders, abettors and conspirators, inclusive, and each of their conduct was a substantial factor in causing AGUIRRE'S harm.

71.     AGUIRRE received a right-to-sue letter from the DFEH and filed this action in a timely manner.  Accordingly, AGUIRRE has timely complied with all prerequisites to suit.

72.     As a proximate result of the wrongful actions by Defendants WELLS FARGO & COMPANY AND WELLS FARGO BANK, N.A., SHERRI PARKS and DOES 1 to 20 as aiders, abettors and conspirators, inclusive, and each of them, against Plaintiff, as alleged above, AGUIRRE has been harmed in that he has suffered the loss of wages, salary, benefits, and additional amounts of money Plaintiff would have received if Plaintiff had not been wrongfully demoted by Defendants.

13

73.     As a further proximate result of the wrongful actions of Defendants WELLS FARGO & COMPANY AND WELLS FARGO BANK, N.A., SHERRI PARKS and DOES 1 to 20 as aiders, abettors and conspirators, inclusive, and each of them, against Plaintiff as alleged above, Plaintiff has been harmed in that Plaintiff has suffered an intangible loss of employment-related opportunities.

74.     As a further proximate result of the wrongful actions of Defendants WELLS FARGO & COMPANY AND WELLS FARGO BANK, N.A., SHERRI PARKS and DOES 1 to 20 as aiders, abettors and conspirators, inclusive, and each of them, against Plaintiff as alleged above, AGUIRRE has been harmed in that he has been harmed in that he has suffered humiliation, mental anguish, emotional and physical distress, anxiety, and has been injured in the mind and body.

75.     The wrongful conduct of Defendants WELLS FARGO & COMPANY AND WELLS FARGO BANK, N.A., SHERRI PARKS and DOES 1 to 20 as aiders, abettors and conspirators, inclusive, and each of them, as set forth herein above was perpetrated upon AGUIRRE intentionally, willfully, fraudulently, in conscious disregard of Plaintiff's rights and safety and with a callous indifference to the injurious consequences which were substantially certain to occur and was shameful, despicable and deplorable.

## FOURTH CAUSE OF ACTION
*Negligent Hiring, Training, Supervision and Retention*
*(As to Defendants WELLS FARGO & COMPANY AND WELLS FARGO BANK, N.A.,*
*SHERRI PARKS and DOES 1 to 20)*

76.     Plaintiff ALEXANDER AGUIRRE refers to and incorporates by reference paragraphs 1 through 73 above, inclusive, as though set forth in full herein, and alleges this Fourth Cause of Action for Negligent Hiring, Training, Supervision and Retention, as against each Defendant WELLS FARGO & COMPANY AND WELLS FARGO BANK, N.A., SHERRI PARKS and DOES 1 to 20 as aiders, abettors and conspirators, inclusive, and each of them, as follows:

77.     Defendant SHERRI PARKS was or became unfit or incompetent to perform the work for which she was hired.

78.     Defendants WELLS FARGO & COMPANY AND WELLS FARGO BANK, N.A., SHERRI PARKS and DOES 1 to 20 as aiders, abettors and conspirators, inclusive, and each of them knew or should have known that SHERRI PARKS was or became unfit or incompetent and that this unfitness or

14

1  | incompetence created a particular risk to others.

2  |     79.    Defendants WELLS FARGO & COMPANY AND WELLS FARGO BANK, N.A.,

3  | SHERRI PARKS and DOES 1 to 20 as aiders, abettors and conspirators, inclusive, and each of them

4  | negligence in hiring, supervising, or retaining SHERRI PARKS was a factor in causing AGUIRRE'S

5  | HARM.

6  |     80.    By the aforesaid acts and omissions by Defendants WELLS FARGO & COMPANY AND

7  | WELLS FARGO BANK, N.A., SHERRI PARKS and DOES 1 to 20 as aiders, abettors and conspirators,

8  | inclusive, and each of them, AGUIRRE has been directly and legally caused to suffer actual damages

9  | including, but not limited to, loss of earnings and future earning capacity, attorneys' fees, costs of suit and

10 | other pecuniary loss not presently ascertained, in an amount according to proof at the time of trial.

11 |     81.    As a further proximate result of the wrongful actions Defendants WELLS FARGO &

12 | COMPANY AND WELLS FARGO BANK, N.A., SHERRI PARKS and DOES 1 to 20 as aiders, abettors

13 | and conspirators, inclusive, and each of them, against Plaintiff, as alleged above, AGUIRRE has been

14 | harmed in that he has suffered humiliation, mental anguish, emotional and physical distress, anxiety, and

15 | has been injured in the mind and body.

16 |     82.    The wrongful conduct of Defendants set forth herein above was perpetrated upon Plaintiff

17 | intentionally, willfully, fraudulently, in conscious disregard of the rights and safety of AGUIRRE and with

18 | a callous indifference to the injurious consequences which were substantially certain to occur and was

19 | shameful, despicable and deplorable.

20 |

21 |                       **PRAYER FOR RELIEF**

22 |                     **DEMAND FOR JURY TRIAL**

23 |

24 |     Plaintiff ALEXANDER AGUIRRE hereby demands a trial by jury in this matter.

25 |

26 |     Plaintiff ALEXANDER AGUIRRE hereby prays for judgment against Defendants WELLS

27 | FARGO & COMPANY and WELLS FARGO BANK, N.A. a Delaware Corporation; SHERRI PARKS,

28 | an individual, and DOES 1-20, as follows:

15

---

**FIRST COMPLAINT FOR DAMAGES**

1.    General, compensatory, and special damages in amounts to be proven at trial;

2.    For prejudgment interest as permitted by Section 3291 of the California Civil Code and any other applicable statutes;

3.    Punitive Damages; and,

4.    For attorney's fees, the costs of suit herein incurred; and,

5.    For such other and further relief as this Court may deem proper.

Dated: January 09, 2020

**HEIT LAW GROUP, P.C**

By: _____
      Brian M. Heit, Esq.

*Attorney for Plaintiff,* ALEXANDER AGUIRRE

16

# EXHIBIT A



Department of Fair Employment and Housing
Enforcement Division



January 21, 2019

Brian Holt Law
120 South Lemon Avenue, Suite 8951
Corona, CA 91719

Personal and Confidential. To Be Opened by Addressee Or Designee Only.



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency          GAVIN NEWSOM, GOVERNOR
**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**          KEVIN KISH, DIRECTOR
2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
(800) 884-1684 (Voice) | (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov | Email: contact.center@dfeh.ca.gov

October 31, 2019

Brian Heit, Esq.
340 South Lemon Avenue, Suite 8933
Walnut, CA 91789

RE:  **Notice to Complainant's Attorney**
DFEH Matter Number: 201910-08126231
Right to Sue: Aguirre / Wells Fargo

Dear Brian Heit, Esq.:

Attached is a copy of your complaint of discrimination filed with the Department of Fair Employment and Housing (DFEH) pursuant to the California Fair Employment and Housing Act, Government Code section 12900 et seq. Also attached is a copy of your Notice of Case Closure and Right to Sue.

**Pursuant to Government Code section 12962, DFEH will not serve these documents on the employer.** You must serve the complaint separately, to all named respondents. Please refer to the attached Notice of Case Closure and Right to Sue for information regarding filing a private lawsuit in the State of California. A courtesy "Notice of Filing of Discrimination Complaint" is attached for your convenience.

Be advised that the DFEH does not review or edit the complaint form to ensure that it meets procedural or statutory requirements.

Sincerely,

Department of Fair Employment and Housing



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency                                    GAVIN NEWSOM, GOVERNOR

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**                                    KEVIN KISH, DIRECTOR
2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
(800) 884-1684 (Voice) | (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov | Email: contact.center@dfeh.ca.gov

October 31, 2019

RE:    **Notice of Filing of Discrimination Complaint**
       DFEH Matter Number: 201910-08126231
       Right to Sue: Aguirre / Wells Fargo

To All Respondent(s):

Enclosed is a copy of a complaint of discrimination that has been filed with the
Department of Fair Employment and Housing (DFEH) in accordance with Government
Code section 12960. This constitutes service of the complaint pursuant to Government
Code section 12962. The complainant has requested an authorization to file a lawsuit.
This case is not being investigated by DFEH and is being closed immediately. A copy of
the Notice of Case Closure and Right to Sue is enclosed for your records.

Please refer to the attached complaint for a list of all respondent(s) and their contact
information.

No response to DFEH is requested or required.

Sincerely,


Department of Fair Employment and Housing



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency

GAVIN NEWSOM, GOVERNOR

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**
KEVIN KISH, DIRECTOR
2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
(800) 884-1684 (Voice) | (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov | Email: contact.center@dfeh.ca.gov

October 31, 2019

Alexander Aguirre
947 N. Placentia Avenue, Apt A
Fullerton, CA 92831

RE:    **Notice of Case Closure and Right to Sue**
DFEH Matter Number: 201910-08126231
Right to Sue: Aguirre / Wells Fargo

Dear Alexander Aguirre,

This letter informs you that Department of Fair Employment and Housing received your request for a Right to Sue. The above-referenced complaint was **filed on**  with the Department of Fair Employment and Housing. As of , your case is closed. Department of Fair Employment and housing will take no further action on the complaint.

This letter is also your Right to Sue notice. According to Government Code section 12965, subdivision (b), a civil action may be brought under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint. The civil action must be filed within one year from the date of this letter.

To obtain a federal Right to Sue notice, you must contact the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of this DFEH Notice of Case Closure letter or within 300 days of the alleged discriminatory act, whichever is earlier.
Sincerely,


Department of Fair Employment and Housing



# CALIFORNIA DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING
## RIGHT-TO-SUE

Your submission of this document acknowledges that you have read and agree to the DFEH's Privacy Policy. By submitting this document, you are declaring under penalty of perjury under the laws of the State of California that to the best of your knowledge all information stated is true and correct, except matters stated on information and belief, which you believe to be true.

**DFEH CASE NUMBER (IF APPLICABLE):**
201910-08126231

**COMPLAINANT:**

| NAME: | TELEPHONE NUMBER: |
|---|---|
| Alexander Aguirre | (909) 605-3713 |

| ADDRESS: | EMAIL ADDRESS: |
|---|---|
| 947 N. Placentia Avenue, Apt. A | alexaguirre692@aol.com |

CITY/STATE/ZIP:
Fullerton, CA 92831

**RESPONDENT:**

| NAME: | TELEPHONE NUMBER: |
|---|---|
| Wells Fargo | (602) 378-7638 |

ADDRESS:

Mail Code S4201-142 100 West Washington Street, Suite 1418

CITY/STATE/ZIP:   .

Phoenix, Arizona 85003

NUMBER OF EMPLOYEES: unknown     TYPE OF EMPLOYER: Banking institute

RECEIVED

OCT 2 4 2019

Department of Fair Employment & Housing
Elk Grove

**ADD CO-RESPONDENT:**

NAME:_____

TITLE:_____

ADDRESS:_____

_____

TELEPHONE NUMBER:_____

**ADD CO-RESPONDENT:**

NAME:_____

TITLE:_____

ADDRESS:_____

_____

TELEPHONE NUMBER:_____


**DATE OF HARM:**

LAST DATE OF HARM (Month/Day/Year):   06/13/2019_____

Right-to-Sue (DFEH 902-6M) Revised 7/2019

1.  I ALLEGE THAT I EXPERIENCED: ☑ Discrimination     ☐ Harassment

**BECAUSE OF MY ACTUAL OR PERCEIVED:**

☐ Age (40 and over)

☐ Ancestry

☐ Association with a member of a protected class

☐ Baby Bonding Leave (employers of 20-49 people)

☐ Color

☐ Criminal History

☐ Disability (physical or mental)

☐ Family Care or Medical Leave (CFRA) (employers of 50 or more people)

☐ Gender Identity or Expression

☐ Genetic Information or Characteristic

☐ Marital Status

☐ Medical Condition (cancer or genetic characteristic)

☐ Military and Veteran Status

☐ National Origin (includes language restrictions)

☐ Pregnancy, childbirth, breastfeeding, and/or related medical conditions

☐ Race

☐ Religious creed (includes dress and grooming practices)

☑ Sex/Gender

☐ Sexual harassment -- hostile environment

☐ Sexual harassment -- quid pro quo

☐ Sexual orientation

☑ Other (specify) Retaliation _____

Right-to-Sue (DFEH 902-6M) Revised 7/2019

**AS A RESULT, I WAS:**

☐ Asked impermissible non-job-related questions
☐ Demoted
☐ Denied accommodation for pregnancy
☐ Denied accommodation for religious beliefs
☐ Denied any employment benefit or privilege
☐ Denied Baby Bonding Leave (employers of 20-49 people)
☐ Denied employer paid health care while on pregnancy disability leave
☐ Denied equal pay
☐ Denied Family Care or Medical Leave (CFRA) (employers of 50 or more people)
☐ Denied hire or promotion
☐ Denied or forced to transfer
☐ Denied reasonable accommodation for a disability
☐ Denied the right to wear pants
☐ Denied work opportunities or assignments
☐ Forced to quit
☐ Laid off
☐ Reprimanded
☐ Suspended
☑ Terminated
☐ Other (specify) _____

I ALLEGE THAT I EXPERIENCED:     ☑ Retaliation

**BECAUSE I:**

☐ Participated as a witness in a discrimination or harassment complaint
☑ Reported or resisted any form of discrimination or harassment
☐ Reported patient abuse (hospital employees only)
☐ Requested or used a disability-related accommodation
☐ Requested or used a pregnancy-disability-related accommodation
☐ Requested or used a religious accommodation
☐ Requested or used baby bonding leave (employers of 20-49 people)
☐ Requested or used leave under the California Family Rights Act or FMLA
   (employers of 50 or more people)

Right-to-Sue (DFEH 902-6M) Revised 7/2019

**AS A RESULT I WAS:**

☐ Asked impermissible non-job-related questions
☐ Demoted
☐ Denied accommodation for pregnancy
☐ Denied accommodation for religious beliefs
☐ Denied any employment benefit or privilege
☐ Denied baby bonding leave (employers of 20-49 people)
☐ Denied employer paid health care while on pregnancy disability leave
☐ Denied equal pay
☐ Denied Family Care or Medical Leave (CFRA) (employers of 50 or more people)
☐ Denied hire or promotion
☐ Denied or forced to transfer
☐ Denied reasonable accommodation for a disability
☐ Denied the right to wear pants
☐ Denied work opportunities or assignments
☐ Forced to quit
☐ Laid off
☐ Reprimanded
☐ Suspended
☑ Terminated
☐ Other (specify) _____

2. Do you have an attorney who agreed to represent you in this matter?  ⦿ Yes  ◯ No
   If yes, please provide the attorney's contact information.

**COMPLAINANT'S REPRESENTATIVE INFORMATION**

Attorney Name: Brian M. Heit, Esq.

Attorney Firm Name: Heit Law Group, P.C.

Attorney Address: 340 South Lemon Avenue, Suite 8933

Attorney City, State, and Zip: Walnut, CA 91789

Right-to-Sue (DFEH 902-6M) Revised 7/2019

3. Briefly describe what you believe to be the reason(s) for the discrimination, harassment, or retaliation. (Optional)

Wells Fargo suffered a loss as a result of a customer's fraudulent activity at the bank. After the loss was confirmed by my managers, my time at work was consumed with stress and worry regarding my job. I was worried that, since I was involved in the chain of causation that led to the loss, I would be blamed or that my managers would lose their jobs. This process of investigation and blame carried on for months. Finally, in or about March of 2019, I could no longer take the uncertainty regarding the loss, and asked my manager to look up the transaction to see who Wells Fargo blamed for the loss.

I contacted human resources in April of 2019 and did not hear back until May, when they told me that I was complaining about discrimination and unfair treatment regarding an event that had yet to take place (e.x. firing or other adverse employment action). They informed me that they were closing my HR complaint until the company made a final decision regarding the loss.

Wells Fargo fired me mere weeks after I complained to human resources and mere days after dismissing my human resources complaint for discrimination/retaliation. The proximity between the retaliation and the dismissal of the human resources complaint is plain for anyone to see, as the two events followed one after the other in less than a month. I was an exemplary employee, having been promoted four times in as many years and earned 50% more than my rate of pay when I started. Wells Fargo's decision to terminate me was clearly retaliatory, since no one else that was involved in with the loss was terminated. The individual that authorized the forty-thousand-dollar check was merely reprimanded, but since I complained to human resources about discrimination, I was the one that was fired.

**VERIFICATION PAGE – THIS PAGE MUST BE COMPLETED**

**Before submitting the form, you must verify who you are and whether you are submitting this information for yourself or someone else.**

Verifier Name:  Alexander Aguirre

Verifier's Relationship to Complainant:  Self

Verifier's City and State: Fullerton, California

**By submitting this document, you are declaring under penalty of perjury under the laws of the State of California that to the best of your knowledge all information stated is true and correct, except matters stated on information and belief, which you believe to be true.**

## DEMOGRAPHIC INFORMATION

THIS INFORMATION IS OPTIONAL AND IS ONLY USED FOR STATISTICAL PURPOSES.

Primary Language:_____          Age: _____

### GENDER / GENDER IDENTITY:

☐ Male   ☐ Female   ☐ Non-Binary   ☐ Other

### MARITAL STATUS:

☐ Single   ☐ Married   ☐ Cohabitation   ☐ Divorced

### RACE:

☐ American Indian, Native American or Alaskan Native
☐ Asian
☐ Black or African American

☐ Native Hawaiian or Other Pacific Islander
☐ White
☐ Other

### ETHNICITY:

☐ Hispanic or Latino          ☐ Non-Hispanic or Latino

### NATIONAL ORIGIN:

| | | | |
|---|---|---|---|
| ☐ Afghani | ☐ German | ☐ Japanese | ☐ Other Middle Eastern |
| ☐ American [U.S.A] | ☐ Ghanaian | ☐ Korean | ☐ Pakistani |
| ☐ Asian Indian | ☐ Guamanian | ☐ Laotian | ☐ Puerto Rican |
| ☐ Bangladeshi | ☐ Haitian | ☐ Lebanese | ☐ Salvadoran |
| ☐ Cambodian | ☐ Hawaiian | ☐ Malaysian | ☐ Samoan |
| ☐ Canadian | ☐ Hmong | ☐ Mexican | ☐ Sri Lankan |
| ☐ Chinese | ☐ Indonesian | ☐ Nigerian | ☐ Syrian |
| ☐ Cuban | ☐ Iranian | ☐ Other | ☐ Taiwanese |
| ☐ Dominican | ☐ Iraqi | ☐ Other African | ☐ Thai |
| ☐ Egyptian | ☐ Irish | ☐ Other Asian | ☐ Tongan |
| ☐ English | ☐ Israeli | ☐ Other Caribbean | ☐ Vietnamese |
| ☐ Ethiopian | ☐ Italian | ☐ Other European | |
| ☐ Fijian | ☐ Jamaican | ☐ Other Hispanic/Latino | |
| ☐ Filipino | | | |

Right-to-Sue (DFEH 902-6M) Revised 7/2019

## DEMOGRAPHIC INFORMATION
THIS INFORMATION IS OPTIONAL AND IS ONLY USED FOR STATISTICAL PURPOSES.

**DISABILITY:**

- [ ] AIDS or HIV
- [ ] Blood / Circulation
- [ ] Brain / Nerves / Muscles
- [ ] Digestive / Urinary / Reproduction
- [ ] Hearing
- [ ] Heart

- [ ] Limbs [Arms / Legs]
- [ ] Mental
- [ ] Sight
- [ ] Speech / Respiration
- [ ] Spinal / Back / Respiration
- [ ] Other Disability

**RELIGION:**

- [ ] Agnostic
- [ ] Atheist
- [ ] Bahai
- [ ] Buddhism
- [ ] Catholicism
- [ ] Christianity
- [ ] Confucianism
- [ ] Hinduism
- [ ] Islam
- [ ] Jehovah's Witness
- [ ] Judaism
- [ ] Neo-Paganism

- [ ] Nonreligious
- [ ] Protestantism
- [ ] Primal-indigenous
- [ ] Quakers
- [ ] Rastafarianism
- [ ] Spiritism
- [ ] Shinto
- [ ] Sikhism
- [ ] Taoism
- [ ] Unitarian-Universalism
- [ ] Zoroastrianism
- [ ] Other

**SEXUAL ORIENTATION:**

- [ ] Straight or Heterosexual
- [ ] Gay or Lesbian
- [ ] Bisexual
- [ ] Other

Right-to-Sue (DFEH 902-6M) Revised 7/2019

Page 10 of 14

**CM-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Brian M. Heit (SNB:302474)<br>Heit Law Group, PC<br>340 South Lemon Avenue, Suite 8933<br>Walnut, CA 91789<br>TELEPHONE NO.: 310-744-5227  FAX NO.: (805) 254-1950<br>ATTORNEY FOR *(Name):* Alexander Aguirre | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  Orange
STREET ADDRESS: 700 W Civic Center Dr
MAILING ADDRESS: 700 W Civic Center Dr
CITY AND ZIP CODE: Santa Ana, CA 92701
BRANCH NAME: Central Justice Center

CASE NAME:
Alexander Aguirre vs. Wells Fargo & Company, et al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|
| ☑ **Unlimited**<br>(Amount<br>demanded<br>exceeds $25,000) | ☐ **Limited**<br>(Amount<br>demanded is<br>$25,000 or less) | ☐ Counter ☐ Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | | 30-2020-01123351-CU-WT-CJC<br>JUDGE: Judge Gregory H. Lewis<br>DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
- ☐ Auto (22)
- ☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- ☐ Asbestos (04)
- ☐ Product liability (24)
- ☐ Medical malpractice (45)
- ☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- ☐ Business tort/unfair business practice (07)
- ☐ Civil rights (08)
- ☐ Defamation (13)
- ☐ Fraud (16)
- ☐ Intellectual property (19)
- ☐ Professional negligence (25)
- ☐ Other non-PI/PD/WD tort (35)

**Employment**
- ☑ Wrongful termination (36)
- ☐ Other employment (15)

**Contract**
- ☐ Breach of contract/warranty (06)
- ☐ Rule 3.740 collections (09)
- ☐ Other collections (09)
- ☐ Insurance coverage (18)
- ☐ Other contract (37)

**Real Property**
- ☐ Eminent domain/Inverse condemnation (14)
- ☐ Wrongful eviction (33)
- ☐ Other real property (26)

**Unlawful Detainer**
- ☐ Commercial (31)
- ☐ Residential (32)
- ☐ Drugs (38)

**Judicial Review**
- ☐ Asset forfeiture (05)
- ☐ Petition re: arbitration award (11)
- ☐ Writ of mandate (02)
- ☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- ☐ Antitrust/Trade regulation (03)
- ☐ Construction defect (10)
- ☐ Mass tort (40)
- ☐ Securities litigation (28)
- ☐ Environmental/Toxic tort (30)
- ☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- ☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- ☐ RICO (27)
- ☐ Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
- ☐ Partnership and corporate governance (21)
- ☐ Other petition *(not specified above)* (43)

2. This case ☐ is ☑ is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. ☑ monetary  b. ☐ nonmonetary; declaratory or injunctive relief  c. ☐ punitive
4. Number of causes of action *(specify):* 4
5. This case ☐ is ☑ is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: 01/09/2020

Brian M. Heit
(TYPE OR PRINT NAME)  (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

---

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>*www.courtinfo.ca.gov* |

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice–Physicians & Surgeons
  Other Professional Health Care Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip and fall)
  Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  Intentional Infliction of Emotional Distress
  Negligent Infliction of Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
  Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/ Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court Case Matter
  Writ–Other Limited Court Case Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of County)
  Confession of Judgment *(non-domestic relations)*
  Sister State Judgment
  Administrative Agency Award *(not unpaid taxes)*
  Petition/Certification of Entry of Judgment on Unpaid Taxes
  Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-harassment)*
  Mechanics Lien
  Other Commercial Complaint Case *(non-tort/non-complex)*
  Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late Claim
  Other Civil Petition

**CM-010**

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):
Brian M. Heit (SNB:302474)
Heit Law Group, PC
340 South Lemon Avenue, Suite 8933
Walnut, CA 91789

TELEPHONE NO.: 310-744-5227     FAX NO.: (805) 254-1950
ATTORNEY FOR (Name): Alexander Aguirre

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Orange
STREET ADDRESS: 700 W Civic Center Dr
MAILING ADDRESS: 700 W Civic Center Dr
CITY AND ZIP CODE: Santa Ana, CA 92701
BRANCH NAME: Central Justice Center

CASE NAME:
Alexander Aguirre vs. Wells Fargo & Company, et al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|
| [✔] Unlimited (Amount demanded exceeds $25,000) | [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter  [ ] Joinder | Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | 30-2020-01123351-CU-WT-CJC |
| | | | | JUDGE: Judge Gregory H. Lewis |
| | | | | DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one box** below for the case type that best describes this case:

**Auto Tort**
- [ ] Auto (22)
- [ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- [ ] Asbestos (04)
- [ ] Product liability (24)
- [ ] Medical malpractice (45)
- [ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- [ ] Business tort/unfair business practice (07)
- [ ] Civil rights (08)
- [ ] Defamation (13)
- [ ] Fraud (16)
- [ ] Intellectual property (19)
- [ ] Professional negligence (25)
- [ ] Other non-PI/PD/WD tort (35)

**Employment**
- [✔] Wrongful termination (36)
- [ ] Other employment (15)

**Contract**
- [ ] Breach of contract/warranty (06)
- [ ] Rule 3.740 collections (09)
- [ ] Other collections (09)
- [ ] Insurance coverage (18)
- [ ] Other contract (37)

**Real Property**
- [ ] Eminent domain/Inverse condemnation (14)
- [ ] Wrongful eviction (33)
- [ ] Other real property (26)

**Unlawful Detainer**
- [ ] Commercial (31)
- [ ] Residential (32)
- [ ] Drugs (38)

**Judicial Review**
- [ ] Asset forfeiture (05)
- [ ] Petition re: arbitration award (11)
- [ ] Writ of mandate (02)
- [ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- [ ] Antitrust/Trade regulation (03)
- [ ] Construction defect (10)
- [ ] Mass tort (40)
- [ ] Securities litigation (28)
- [ ] Environmental/Toxic tort (30)
- [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- [ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- [ ] RICO (27)
- [ ] Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
- [ ] Partnership and corporate governance (21)
- [ ] Other petition (not specified above) (43)

2. This case [ ] is  [✔] is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties     d. [ ] Large number of witnesses
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve     e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   c. [ ] Substantial amount of documentary evidence     f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. [✔] monetary  b. [ ] nonmonetary; declaratory or injunctive relief  c. [ ] punitive
4. Number of causes of action (specify): 4
5. This case [ ] is  [✔] is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: 01/09/2020
Brian M. Heit
_____
(TYPE OR PRINT NAME)                          (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

CIVIL CASE COVER SHEET

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
Asbestos Property Damage
Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
Medical Malpractice– Physicians & Surgeons
Other Professional Health Care Malpractice
Other PI/PD/WD (23)
Premises Liability (e.g., slip and fall)
Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
Intentional Infliction of Emotional Distress
Negligent Infliction of Emotional Distress
Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
Legal Malpractice
Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
Negligent Breach of Contract/ Warranty
Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
Collection Case–Seller Plaintiff
Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
Auto Subrogation
Other Coverage
Other Contract (37)
Contractual Fraud
Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
Writ of Possession of Real Property
Mortgage Foreclosure
Quiet Title
Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
Writ–Administrative Mandamus
Writ–Mandamus on Limited Court Case Matter
Writ–Other Limited Court Case Review
Other Judicial Review (39)
Review of Health Officer Order
Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
Abstract of Judgment (Out of County)
Confession of Judgment *(non-domestic relations)*
Sister State Judgment
Administrative Agency Award *(not unpaid taxes)*
Petition/Certification of Entry of Judgment on Unpaid Taxes
Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
Declaratory Relief Only
Injunctive Relief Only *(non-harassment)*
Mechanics Lien
Other Commercial Complaint Case *(non-tort/non-complex)*
Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
Civil Harassment
Workplace Violence
Elder/Dependent Adult Abuse
Election Contest
Petition for Name Change
Petition for Relief From Late Claim
Other Civil Petition

## SUPERIOR COURT OF CALIFORNIA
### COUNTY OF ORANGE

# ALTERNATIVE DISPUTE RESOLUTION (ADR)
# INFORMATION PACKAGE

**NOTICE TO PLAINTIFF(S) AND/OR CROSS-COMPLAINANT(S):**

**Rule 3.221(c) of the California Rules of Court requires you to serve a copy of the ADR Information Package along with the complaint and/or cross-complaint.**

California Rules of Court – Rule 3.221
Information about Alternative Dispute Resolution (ADR)

(a) Each court shall make available to the plaintiff, at the time of filing of the complaint, an ADR Information Package that includes, at a minimum, all of the following:

(1) General information about the potential advantages and disadvantages of ADR and descriptions of the principal ADR processes.

(2) Information about the ADR programs available in that court, including citations to any applicable local court rules and directions for contacting any court staff responsible for providing parties with assistance regarding ADR.

(3) Information about the availability of local dispute resolution programs funded under the Dispute Resolutions Program Act (DRPA), in counties that are participating in the DRPA. This information may take the form of a list of the applicable programs or directions for contacting the county's DRPA coordinator.

(4) An ADR stipulation form that parties may use to stipulate to the use of an ADR process.

(b) A court may make the ADR Information Package available on its Web site as long as paper copies are also made available in the clerk's office.

(c) The plaintiff must serve a copy of the ADR Information Package on each defendant along with the complaint. Cross-complainants must serve a copy of the ADR Information Package on any new parties to the action along with the cross-complaint.

# SUPERIOR COURT OF CALIFORNIA
# COUNTY OF ORANGE

## ADR Information

**Introduction.**

Most civil disputes are resolved without filing a lawsuit, and most civil lawsuits are resolved without a trial. The courts and others offer a variety of Alternative Dispute Resolution (ADR) processes to help people resolve disputes without a trial. ADR is usually less formal, less expensive, and less time-consuming than a trial. ADR can also give people more opportunity to determine when and how their dispute will be resolved.

## BENEFITS OF ADR.

Using ADR may have a variety of benefits, depending on the type of ADR process used and the circumstances of the particular case. Some potential benefits of ADR are summarized below.

**Save Time.**  A dispute often can be settled or decided much sooner with ADR; often in a matter of months, even weeks, while bringing a lawsuit to trial can take a year or more.

**Save Money.**  When cases are resolved earlier through ADR, the parties may save some of the money they would have spent on attorney fees, court costs, experts' fees, and other litigation expenses.

**Increase Control Over the Process and the Outcome.**  In ADR, parties typically play a greater role in shaping both the process and its outcome. In most ADR processes, parties have more opportunity to tell their side of the story than they do at trial. Some ADR processes, such as mediation, allow the parties to fashion creative resolutions that are not available in a trial. Other ADR processes, such as arbitration, allow the parties to choose an expert in a particular field to decide the dispute.

**Preserve Relationships.**  ADR can be a less adversarial and hostile way to resolve a dispute. For example, an experienced mediator can help the parties effectively communicate their needs and point of view to the other side. This can be an important advantage where the parties have a relationship to preserve.

**Increase Satisfaction.**  In a trial, there is typically a winner and a loser. The loser is not likely to be happy, and even the winner may not be completely satisfied with the outcome. ADR can help the parties find win-win solutions and achieve their real goals. This, along with all of ADR's other potential advantages, may increase the parties' overall satisfaction with both the dispute resolution process and the outcome.

**Improve Attorney-Client Relationships.**  Attorneys may also benefit from ADR by being seen as problem-solvers rather than combatants. Quick, cost-effective, and satisfying resolutions are likely to produce happier clients and thus generate repeat business from clients and referrals of their friends and associates.

## DISADVANTAGES OF ADR.

ADR may not be suitable for every dispute.

**Loss of protections.**  If ADR is binding, the parties normally give up most court protections, including a decision by a judge or jury under formal rules of evidence and procedure, and review for legal error by an appellate court.

L1200 (Rev. January 2010)

**Less discovery.**  There generally is less opportunity to find out about the other side's case with ADR than with litigation.   ADR may not be effective if it takes place before the parties have sufficient information to resolve the dispute.

**Additional costs.**  The neutral may charge a fee for his or her services.  If a dispute is not resolved through ADR, the parties may have to put time and money into both ADR and a lawsuit.

**Effect of delays if the dispute is not resolved.**  Lawsuits must be brought within specified periods of time, known as statues of limitation.  Parties must be careful not to let a statute of limitations run out while a dispute is in an ADR process.

## TYPES OF ADR IN CIVIL CASES.

The most commonly used ADR processes are arbitration, mediation, neutral evaluation and settlement conferences.

**Arbitration.**  In arbitration, a neutral person called an "arbitrator" hears arguments and evidence from each side and then decides the outcome of the dispute. Arbitration is less formal than a trial, and the rules of evidence are often relaxed. Arbitration may be either "binding" or "nonbinding." *Binding arbitration* means that the parties waive their right to a trial and agree to accept the arbitrator's decision as final. Generally, there is no right to appeal an arbitrator's decision. *Nonbinding* arbitration means that the parties are free to request a trial if they do not accept the arbitrator's decision.

   **Cases for Which Arbitration May Be Appropriate.**  Arbitration is best for cases where the parties want another person to decide the outcome of their dispute for them but would like to avoid the formality, time, and expense of a trial. It may also be appropriate for complex matters where the parties want a decision-maker who has training or experience in the subject matter of the dispute.

   **Cases for Which Arbitration May Not Be Appropriate.**  If parties want to retain control over how their dispute is resolved, arbitration, particularly binding arbitration, is not appropriate. In binding arbitration, the parties generally cannot appeal the arbitrator's award, even if it is not supported by the evidence or the law. Even in nonbinding arbitration, if a party requests a trial and does not receive a more favorable result at trial than in arbitration, there may be penalties.

**Mediation.**  In mediation, an impartial person called a "mediator" helps the parties try to reach a mutually acceptable resolution of the dispute. The mediator does not decide the dispute but helps the parties communicate so they can try to settle the dispute themselves. Mediation leaves control of the outcome with the parties.

   **Cases for Which Mediation May Be Appropriate.**  Mediation may be particularly useful when parties have a relationship they want to preserve. So when family members, neighbors, or business partners have a dispute, mediation may be the ADR process to use. Mediation is also effective when emotions are getting in the way of resolution. An effective mediator can hear the parties out and help them communicate with each other in an effective and nondestructive manner.

   **Cases for Which Mediation May Not Be Appropriate.**  Mediation may not be effective if one of the parties is unwilling to cooperate or compromise. Mediation also may not be effective if one of the parties has a significant advantage in power over the other. Therefore, it may not be a good choice if the parties have a history of abuse or victimization.

**Neutral Evaluation.**  In neutral evaluation, each party gets a chance to present the case to a neutral person called an "evaluator." The evaluator then gives an opinion on the strengths and weaknesses of each party's evidence and arguments and about how the dispute could be resolved. The evaluator is

often an expert in the subject matter of the dispute. Although the evaluator's opinion is not binding, the parties typically use it as a basis for trying to negotiate a resolution of the dispute.

**Cases for Which Neutral Evaluation May Be Appropriate.**  Neutral evaluation may be most appropriate in cases in which there are technical issues that require special expertise to resolve or the only significant issue in the case is the amount of damages.

**Cases for Which Neutral Evaluation May Not Be Appropriate.**  Neutral evaluation may not be appropriate when there are significant personal or emotional barriers to resolving the dispute.

**Settlement Conferences.**  Settlement conferences may be either mandatory or voluntary. In both types of settlement conferences, the parties and their attorneys meet with a judge or a neutral person called a "settlement officer" to discuss possible settlement of their dispute. The judge or settlement officer does not make a decision in the case but assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement. Settlement conferences are appropriate in any case where settlement is an option. Mandatory settlement conferences are often held close to the date a case is set for trial.

**ADDITIONAL INFORMATION.**

In addition to mediation, arbitration, neutral evaluation, and settlement conferences, there are other types of ADR, including conciliation, fact finding, mini-trials, and summary jury trials.  Sometimes parties will try a combination of ADR types.  The important thing is to try to find the type or types of ADR that are most likely to resolve your dispute.

To locate a dispute resolution program or neutral in your community:
- Contact the California Department of Consumer Affairs, Consumer Information Center, toll free, 1-800-852-5210
- Contact the Orange County Bar Association at (949) 440-6700
- Look in the Yellow Pages under "Arbitrators" or "Mediators"

Free mediation services are provided under the Orange County Dispute Resolution Program Act (DRPA) For information regarding DRPA, contact:
- Community Service Programs, Inc. (949) 851-3168
- Orange County Human Relations (714) 834-7198

For information on the Superior Court of California, County of Orange court ordered arbitration program, refer to Local Rule 360.

The Orange County Superior Court offers programs for Civil Mediation and Early Neutral Evaluation (ENE).  For the Civil Mediation program, mediators on the Court's panel have agreed to accept a fee of $300 for up to the first two hours of a mediation session.  For the ENE program, members of the Court's panel have agreed to accept a fee of $300 for up to three hours of an ENE session.  Additional information on the Orange County Superior Court Civil Mediation and Early Neutral Evaluation (ENE) pilot programs is available on the Court's website at www.occourts.org.

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name & Address):* | *FOR COURT USE ONLY* |
|---|---|
| Telephone No.:                            Fax No. (Optional): <br> E-Mail Address (Optional): <br> ATTORNEY FOR *(Name):*                        Bar No: | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE**
JUSTICE CENTER:
☐ Central - 700 Civic Center Dr. West, Santa Ana, CA 92701-4045
☐ Civil Complex Center - 751 W. Santa Ana Blvd., Santa Ana, CA 92701-4512
☐ Harbor-Laguna Hills Facility – 23141 Moulton Pkwy., Laguna Hills, CA 92653-1251
☐ Harbor – Newport Beach Facility – 4601 Jamboree Rd., Newport Beach, CA 92660-2595
☐ North – 1275 N. Berkeley Ave., P.O. Box 5000, Fullerton, CA 92838-0500
☐ West – 8141 13ᵗʰ Street, Westminster, CA 92683-0500

PLAINTIFF/PETITIONER:

DEFENDANT/RESPONDENT:

| **ALTERNATIVE DISPUTE RESOLUTION (ADR) STIPULATION** | CASE NUMBER: |
|---|---|

Plaintiff(s)/Petitioner(s),_____

_____

and defendant(s)/respondent(s), _____

_____

agree to the following dispute resolution process:

☐ Mediation

☐ Arbitration (must specify code)
  ☐ Under section 1141.11 of the Code of Civil Procedure
  ☐ Under section 1280 of the Code of Civil Procedure

☐ Neutral Case Evaluation

The ADR process must be completed no later than 90 days after the date of this Stipulation or the date the case was referred, whichever is sooner.

☐ I have an *Order on Court Fee Waiver* (FW-003) on file, and the selected ADR Neutral(s) are eligible to provide pro bono services.

☐ The ADR Neutral Selection and Party List is attached to this Stipulation.

We understand that there may be a charge for services provided by neutrals.  We understand that participating in an ADR process does not extend the time periods specified in California Rules of Court rule 3.720 et seq.

Date: _____        _____        _____
                                          (SIGNATURE OF PLAINTIFF OR ATTORNEY)                    (SIGNATURE OF PLAINTIFF OR ATTORNEY)

Date: _____        _____        _____
                                          (SIGNATURE OF DEFENDANT OR ATTORNEY)                  (SIGNATURE OF DEFENDANT OR ATTORNEY)

**ALTERNATIVE DISPUTE RESOLUTION (ADR) STIPULATION**

Approved for Optional Use
L1270 (Rev. January 2010)

California Rules of Court, rule 3.221